UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERCA,<br><br>Plaintiff,<br><br>v.<br><br>KYLE COLTON,<br><br>Defendant. | No. 2:24-cr-00029-DAD<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO SUPPRESS EVIDENCE<br><br>(Doc. No. 26 ) |

This matter is before the court on defendant Kyle Colton's motion to suppress evidence seized pursuant to a warrant issued on December 12, 2023. That warrant authorized the search of his residence and his electronic devices, including computers located at that residence, for evidence of his violation of federal criminal laws in connection with his participation in the attack on the U.S. Capitol on January 6, 2021. (Doc. Nos. 26, 26-1.) The motion came before the court for hearing on November 19, 2024 and, after the filing of supplemental briefing, again on January 13, 2025. (Doc. Nos. 36, 39.) At those hearings, Assistant United States Attorney Whitnee Goins appeared on behalf on the government and Assistant Federal Defender Doug Beevers appeared on behalf of defendant.

In the pending motion to suppress evidence defendant argues that: (1) the search warrant when issued and executed was stale and the supporting affidavit failed to establish probable cause to believe that evidence of a crime would still be found at defendant's residence in December

1

2023; (2) even if not stale, the affidavit failed to establish probable cause to believe evidence of a crime would be found at the location to be searched, especially with respect to defendant's computer; (3) the affidavit in support of the search warrant contained intentionally false or misleading statements or omitted information material to the probable cause determination as prohibited under *Franks v. Delaware*, 438 U.S. 154 (1978); and (4) the good faith exception to the exclusionary rule does not apply under the circumstances of this case.  (Doc. Nos. 26 at 9–22; 34 at 2–11; 38 at 16; 40.)

Below, the court will provide the factual background against which the pending motion to suppress evidence has been brought.[1]  The court will then address each of the arguments advanced by defendant in support of the pending motion, but not in the order presented by defendant.

## BACKGROUND[2]

In 2021, federal law enforcement agencies began investigating crimes committed in connection with the January 6, 2021 attack on the U.S. Capitol.  During that investigation, defendant Colton came to the attention of law enforcement as having been involved in trespassing at the Capitol that day, being involved in civil disorder, and engaging in disorderly conduct in violation of various federal laws.  Specifically, CCTV footage established that he had trespassed at the Capitol on January 6 and used a cell phone to photograph and videotape the events inside the Capitol.  The CCTV video captured images of defendant Colton taken both inside and outside the U.S. Capitol depicting what he was wearing, including a distinctive campaign flag as a cape. Other videos taken by law enforcement officers' body worn cameras showed defendant Colton inside the U.S. Capitol with other rioters and failing to abide by the orders of officers to leave the building.

/////

---

[1] As will become apparent, in light of the charge brought against defendant Colton in this case, to the extent this factual background relates to the events of January 6, 2021, its relevance is strictly limited to the issuance of the search warrant for defendant's residence on December 12, 2023.

[2] The facts set forth in this section come from the December 12, 2021 search warrant affidavit (Doc. No. 26-1) or the parties' briefing on the pending motion (Doc. Nos. 26, 30, 34, 37, 38, 40).

The following day, the FBI received a tip from a passenger on a January 7, 2021 Delta Airlines flight from Washington, D.C. to Los Angeles, that a passenger on that flight had told others that he was part of the "second wave" of rioters in the U.S. Capitol building the day before. Thereafter, the FBI separately interviewed the passenger who had provided the tip and another passenger on the flight. Both of those witnesses identified defendant Colton as the passenger who stated he was part of the attack and one of the witnesses told agents that defendant Colton had showed the passenger pictures from the rally at the Ellipse and a video of those attacking the U.S. Capitol struggling with law enforcement inside the building. Airline records corroborated that the passenger identified by the witnesses was defendant Colton. Later in July 2021, pursuant to search warrant, the FBI recovered text messages sent by defendant Colton from his cell phone to a New York subject of investigation, in which Colton thanked the person for a ride and forwarded photos of the attack inside the U.S. Capitol with the message "Check out my photos from inside the capitol."

In November of 2021 and May of 2022, defendant Colton's address in Citrus Heights was confirmed by law enforcement and, in 2022, pole camera coverage confirmed that he was coming and going from that residence. Defendant Colton appeared to share that residence with his brother and his family but defendant Colton had his own bedroom. In November of 2023, surveillance established that defendant Colton still resided at that address.

On December 12, 2023, the FBI submitted an affidavit in support of the issuance of a search warrant for defendant Colton's residence to U.S. Magistrate Judge Deborah Barnes. The warrant was issued that day and authorized the search of the defendant and his residence, including his cell phone and digital devices it appeared reasonably likely that he owned or had access to, for evidence of civil disorder in violation of 18 U.S.C. § 231(a), entering or remaining in or engaging in disorderly conduct in a restricted building in violation of 18 U.S.C. §§ 1752(a)(1) and (2), and engaging in disorderly conduct in any of the grounds or Capitol Buildings or parading or demonstrating in any of the Capitol Buildings in violation 40 U.S.C §§ 5104(e)(2)(D) and (G) as specifically described in the warrant. The warrant was apparently executed on December 14, 2023. During that search, a cell phone was found on defendant

3

1  Colton's person with the photos taken by him on January 6, 2021, still on the phone.  A computer
2  was located inside the bedroom of the residence which was identified as the defendant's.  A
3  search of that computer revealed indicia of child pornography.  A rollover warrant seeking
4  authorization to search for child pornography was then sought.  On January 10, 2024, Magistrate
5  Judge Barnes issued the rollover search warrant and the execution of that rollover warrant
6  resulted in the discovery of child pornography on the defendant's computer.  One February 15,
7  2024, defendant Colton was indicted and charged in one count with receipt of child pornography
8  in violation of 18 U.S.C. § 2252(a).

As noted above, defendant Colton has moved for the suppression of all evidence seized pursuant to the search of his computer.[3]

## ANALYSIS

**I.   *Franks v. Delaware* and the Substantial Preliminary Showing Requirement**

In his scattershot motion to suppress, defendant Colton argues that the affiant FBI Agent misled the reviewing magistrate judge by describing defendant's conduct at the U.S. Capital on January 6, 2021 as involving an assault on his part, when in fact defendant was merely defending himself.  (Doc. No. 26 at 19.)  Although not referred to in the section of his motion presenting a *Franks* challenge, elsewhere in his motion defendant suggests that the search warrant affidavit also presented false or misleading information by stating that:  1)  the 2020 campaign flag the defendant wore as a cape while inside the Capitol on the day in question was distinctive; 2) in the affiant's training and experience it is common for people to back up or preserve copies of digital media across multiple devices to prevent loss; 3) some companies provide services that seamlessly sync data across devices; and 4) many individuals involved in the January 6, 2021 attack on the U.S. Capitol posted videos, photos, and commentary about their participation in the events of that day.  (Doc. Nos. 26 at 3–4, 12–14; 34 at 10.)  The government responds that defendant Colton has simply failed to make the required substantial preliminary showing that any

---

[3] At least inferentially the defendant seeks suppression of all evidence seized from his computer pursuant to the rollover search warrant as the fruit of the poisonous tree stemming from what he argues was the initial unlawful search.

4

of the affiant's challenged statements were false or misleading or, in some instances, material to the probable cause determination and that defendant is therefore not entitled to an evidentiary hearing under *Franks*. (Doc. No. 30 at 7–14.) The court finds the government's argument in this regard to be persuasive.

Where the veracity of a search warrant affidavit is challenged, the affidavit is entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Nonetheless, an evidentiary hearing is required under *Franks* if the defendant "makes a substantial preliminary showing" that (1) the affiant officer intentionally or recklessly made false or misleading statements or intentionally omitted facts; and (2) the false or misleading statements or omissions were material, that is, were necessary to the finding of probable cause. *United States v. Craighead*, 539 F.3d 1073, 1080–81 (9th Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56); *see also United States v. Norris,* 942 F.3d 902, 909–10 (9th Cir. 2019); *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017); *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011); *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988). Thus, an evidentiary hearing is required if the defendant presents specific allegations, alleges a deliberate falsehood or reckless disregard for the truth, and supports that claim with a sufficient offer of proof. *Craighead*, 539 F.3d at 1080 (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)). To ultimately prevail on a *Franks* challenge, the defendant must demonstrate both of the above requirements by a preponderance of the evidence. *Perkins*, 850 F.3d at 1116. If both requirements are satisfied, the "warrant must be voided and the fruits of the search excluded." *Id*. (quoting *Franks*, 438 U.S. at 156).

Under the first step of *Franks*, a defendant must show that the affiant intentionally or recklessly made misleading statements or omissions. *Craighead*, 539 F.3d at 1080–81. Generally, "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks*, 438 U.S. at 165. In the context of omissions, "[b]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985). To do so

5

1  would "effectively usurp[ ] the magistrate's duty to conduct an independent evaluation of
2  probable cause." *Perkins*, 850 F.3d at 1118; *see also Johns*, 948 F.2d at 606–07 (omitting facts
3  that "cast doubt on the existence of probable cause" makes such omissions material); *United*
4  *States v. Flores*, 679 F.2d 173, 177 n.1 (9th Cir. 1982) ("A magistrate cannot adequately
5  determine the existence of probable cause with the requisite judicial neutrality and independence
6  if the police provide him or her with a false, misleading, or partial statement of the relevant
7  facts."). However, an affiant's "negligent or innocent mistake does not warrant suppression."
8  *Perkins*, 850 F.3d at 1116.

9      Under the second step of *Franks*, a defendant must show that the misleading statement or
10 omission was material, i.e. necessary to the probable cause determination. *Id*. In the context of
11 omissions from the supporting affidavit, "[t]he key inquiry is 'whether probable cause remains
12 once the evidence presented to the magistrate judge is supplemented with the challenged
13 omissions.'" *Id*. at 1119 (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)).
14 Stated differently, an omission is material where the inclusion of the omitted facts would "cast
15 doubt on the existence of probable cause." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 435 (9th
16 Cir. 2010) (quoting *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992)). Of course,
17 probable cause to believe that a crime has been committed exists if there is a "fair probability"
18 that a suspect has committed a crime based on the totality of the circumstances. *United States v.*
19 *Struckman*, 603 F.3d 731, 739 (9th Cir. 2010); *see also Illinois v. Gates*, 462 U.S. 213, 238
20 (1983). The probable cause standard does not require a court "to believe to an absolute certainty,
21 or by clear and convincing evidence, or even by a preponderance of the available evidence, that [a
22 suspect] had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1078 (9th Cir. 2007);
23 *see also United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (*en banc*).

24     In support of his *Franks* challenge defendant Colton has presented a video clip which he
25 contends establishes that he was not involved in an assault at the Capitol on January 6, 2021.
26 (Doc. No. 26 , Ex. L.) Based upon this showing, defendant Colton argues that the following
27 statement by the affiant was knowingly false: "At one point COLTON grabbed a flagpole that
28 was being used by a rioter to assault MPD Officer K.D. COLTON gained control of the flagpole,

1 which Officer K.D. had also grabbed, and then gave it back to this rioter, who then fled into the

2 crowd of rioters with the flagpole." (Doc. No. 26-1 (Search Warrant Affidavit) at 28, ¶48.) In

3 addition, defendant presents a March 31, 2020, article by Avast, an entity billing itself as a global

4 leader in digital security, reporting that an online survey indicated that at that time 44% of

5 Americans did not back up their data (meaning 56% did) and that of those who did, 21% backed

6 up their cell phones to their computer. (Doc. No. 26-11.)[4] Based upon this evidence, defendant

7 Colton contends that the following portion of the affidavit was false or misleading:

> in my training and experience, it is common for individuals to back up or preserve copies of digital media (such as photos and videos) across multiple devices to prevent loss. Indeed, some companies provide services that seamlessly sync data across multiple devices. Thus, there is reason to believe that evidence of the offense that originally resided on COLTON's cell phone may also be saved to other digital devices within the PREMISES.

12 (Doc. No. 26-1 (Search Warrant Affidavit) at 34, ¶ 65.)

13 Far from the substantial preliminary showing required, the court finds that defendant

14 Colton's showing in support of his *Franks* is quite weak, bordering on non-existent. First, as to

15 the affiant's recounting of defendant's handling of the flagpole inside the Capitol, the

16 undersigned has reviewed the video of the encounter offered by the defense. It is not clear that

17 the video depicts the same moments in time as reflected in the still photos which were set forth in

18 the search warrant affidavit. In any event, the court finds that the affiant's description (which

19 does not identify defendant has having assaulted anyone) of the chaotic scene as rioters

20 repeatedly surged toward police, is a reasonably fair and accurate account of what those

21 photographs depict. Finally, it appears clear that, even were this not the case, any misleading

22 information in this regard has not been shown to impact the probable cause determination.

23 As to his challenge to the veracity of the affidavit with respect to it being "common" for

24 people to back up or preserve copies of photos or videos across multiple digital devices to avoid

25 loss, defendant has made no showing that the affidavit was knowingly false in its representation.

---

[4] Though somewhat unclear, the article submitted by defendant appears to reflect that at the time of it was published the survey indicated that 62% of iPhone users and 65% of Android phone users backed up their data. ((Doc. No. 26 at, Ex. K at 3.)

1 First, this representation was couched in the affidavit as being based upon the affiant's "training
2 and experience."  While the training and experience referred to in this regard is not identified by
3 the affiant with any degree of specificity, defendant has made no showing that the statement is
4 knowingly false.  Moreover, the evidence offered by defendant in challenging this statement does
5 not in any way show that it is false.  Rather, the offered evidence suggests that in March 2020 or
6 earlier (some 3 ½ years before the search warrant affidavit was drafted) well over 60% of iPhone
7 and Android phone users did back up the data on their phones according to the one survey cited
8 and many did so to their computers or external drives.  Finally, the court would note that
9 "common" has been defined as "[u]sual, ordinary, accustomed . . . .  Generally or prevalent, of
10 frequent or ordinary occurrence or appearance; familiar by reason of frequency."  Black's Law
11 Dictionary at 249 (5th ed. 1979).  Given this definition and record, there has been no preliminary
12 showing by defendant that the challenged statement as it appears in the affidavit was knowingly
13 false or misleading.

14 Having failed to make the required substantial preliminary showing as to either step of the
15 *Franks* test, defendant Colton is neither entitled to an evidentiary hearing nor to suppression of
16 evidence under *Franks*.

17 **II.     Was the Warrant Stale?**

18 Defendant next argues that the information contained in the search warrant affidavit was
19 stale and that the warrant failed to establish probable cause to believe that evidence of the crimes
20 being investigated would still be found at defendant's residence in December of 2023.  (Doc.
21 Nos. 26 at 9–12; 34 at 8–10.)  The government responds by arguing that it has been recognized
22 that computer files can be preserved and easily recovered years after downloading.  (Doc. No. 30
23 at 16–17.)  Moreover, in addition to explaining the necessary length of the investigation, the
24 government points out that the affidavit in this case set forth in detail how it had been shown by
25 investigation in specific cases across the country that those involved in the January 6 attack on the
26 U.S. Capitol had maintained evidence of their involvement at their residences ever since.  (*Id.* at
27 17–18.)  The government's arguments in this regard are persuasive.
28 /////

The "mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988); *see also United States v. Kvashuk*, 29 F.4th 1077, 1087 (9th Cir. 2022) (same). Rather, the court must "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (internal quotation omitted). "The information offered in support of the application for a search warrant is not stale if 'there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.'" *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984)). This "is particularly true with electronic evidence" in light of "the long memory of computers" since "evidence of a crime typically remains on a computer even if the defendant attempts to delete it" and thus is retrievable by computer forensic experts. *Kvashuk*, 29 F.4th at 1087 (quoting *United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) and citing *Gourde*, 440 F.3d at 1068).

Here, the facts presented to establish probable cause for the issuance of the warrant for defendant's residence, including his devices and computers, were not stale. First, the affiant stated that in his training and experience people keep and re-wear clothing and accessories and maintain those items in their homes. (Doc. No. 26, Ex. A (Search Warrant Affidavit) at 30, ¶ 56.) In particular, the affiant stated that people keep items such as the distinct campaign flag defendant Colton wore on January 6, 2021, for years and even decades. (*Id.*) As noted above, the affiant then recounted that as part of the investigation into the events of January 6, 2021, he was aware of searches conducted during the period of early 2021 through November of 2023, where it was discovered that individuals who participated in the January 6 attack on the Capitol had continued to maintain at their homes cell phones, clothing, hats, weapons, protective gear, and other items that they had worn or possessed during their involvement in the attack on the U.S. Capitol that

/////

/////

/////

/////

day.[5] (*Id.* at 31–33, ¶¶ 56–61.) The affiant also stated that defendant Colton had his cell phone in his possession during his involvement in the January 6 attack, used the phone by taking photos and videos of the events that day which he showed to others, and that in his training and experience individuals routinely keep their mobile phones for many months or years. (*Id.* at 33–34, ¶¶ 62–64.)

Based upon these sections of the affidavit in support of the search warrant, the court finds that the information set forth therein was not stale. Rather, by providing: 1) several actual instances of those involved in the January 6 attack on the U.S. Capitol retaining evidence of their involvement at their residence for years thereafter; and 2) the affiant's training and experience that such evidence, including photos and videos taken by defendant would still be found at his residence in December of 2023, the affidavit established ample probable cause to believe that the evidence would still be found at the location to be searched.

### III.     Probable Cause – Defendant's Digital Devices and Computers

Finally, defendant Colton argues that the supporting affidavit failed to establish probable cause to search his digital devices and computer found at his residence for evidence. (Doc. No. 26 at 14–20.) In this regard, defendant contends that the mere capability of backing-up or transferring his cell phone photos and videos onto his computer is not sufficient, absent more, to establish probable cause to search his computer. (*Id.* at 16) (citing *United States v. Payton*, 573 F.3d 859, 864 (9th Cir. 2009)). Indeed, defendant contends, there was not probable cause established that he even possessed a computer at his residence. (*Id.* at 17.) According to defendant, the affiant's statement that in his experience it is common for individuals to back up photos and videos from their cell phone onto their computers is insufficient to establish probable

---

[5] Defendant argues that cases addressing probable cause in the context of child pornography investigations are less relevant to the resolution of the pending motion because in those cases the search warrant affidavits "include[ ] details describing the specific hoarding character of people who collect child pornography." (Doc. No. 40 at 1.) The court does not find this argument persuasive. This is because, as recounted above, the supporting affidavit in this case described in specific detail how many of those involved in the events of January 6, 2021, were known to have retained evidence of their involvement for years and kept and posted videos and photos of that participation. Thus, although the context of the "hoarding character" may be different, the conduct described is essentially the same.

1  cause to believe that evidence of the crimes under investigation would be found on a computer
2  found at his residence. (*Id.* at 18.) Put another way, defendant argues that this general statement
3  based upon the affiant's training and experience fails to provide a sufficient nexus between the
4  items to be seized and the computer to be searched. (Doc. No. 34 at 3.)

5  The government responds that the affidavit in support of the search warrant established a
6  reasonable nexus between the defendant's cell phone and evidence of his commission of the
7  crimes appearing on it, his residence, and his computer located there. (Doc. No. 30.) In this
8  regard, the government argues that there need not be direct evidence that objects of a search are
9  located at the residence to be searched but only that "it would be reasonable to seek the evidence
10 in the place indicated in the affidavit." (*Id.* at 19) (quoting *Pitts*, 6 F.3d at 1369). The
11 government contends, because there was certainly probable cause to believe that defendant had
12 used his cell phone to photograph and video record his involvement in the crimes under
13 investigation with his cell phone and was likely to maintain possession of that evidence, the
14 affiant's experience and training that videos and photographs are commonly backed up from
15 mobile devices to one's computer provided probable cause to search defendant's computer. (*Id.*
16 at 20–21; Doc. No. 37 at 1–5.)

17 "A [search] warrant must be supported by probable cause—meaning a 'fair probability
18 that contraband or evidence of a crime will be found in a particular place based on the totality of
19 circumstances.'" *Kvashuk*, 29 F.4th at 1085 (quoting *United States v. King*, 985 F.3d 702, 707
20 (9th Cir. 2021)); *see also Florida v. Harris,* 568 U.S. 237, 244, (2013) ("All we have required is
21 the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians,
22 act.'"); *Gates*, 462 U.S. at 238 (probable cause is satisfied where "there is a fair probability that
23 contraband or evidence of a crime will be found in a particular place."); *Struckman*, 603 F.3d at
24 739. The probable cause standard does not require the court to make its finding to "an absolute
25 certainty, or by clear and convincing evidence, or even by a preponderance of the available
26 evidence." *Lopez*, 482 F.3d at 1078; *see also Gourde*, 440 F.3d at 1069 (probable cause means
27 "fair probability," not certainty or even a preponderance of the evidence). The probable cause
28 standard has been recognized as inherently "incapable of precise definition or quantification into

11

1 percentages because it deals with probabilities and depends on the totality of the circumstances."
2 *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Nevertheless, "the substance of all the
3 definitions of probable cause is a reasonable ground for belief." *Id.*

4 The probable cause showing made for the search of defendant Colton's computer (if found
5 at his residence) was, in the undersigned's view, not robust. The supporting affidavit certainly
6 established probable cause to believe that evidence of defendant Colton's violation of federal law
7 in connection with the attack on the U.S. Capitol would be found at his residence. In this regard,
8 the affidavit established probable cause to believe that the clothing defendant Colton wore during
9 the events of January 6, 2021, including the hat and the distinctive campaign flag he wore as a
10 cape would still be found at his residence in December of 2023. The same is true of defendant
11 Colton's cell phone that he used to take photos and videos of the events of that day and which he
12 chose to share with others, both people he knew to some extent and those that he did not,
13 including the people sitting next to him on his flight home to the Sacramento area. Based upon
14 investigation conducted in other cases of individuals who took part in the events of January 6, the
15 affidavit established probable cause to believe that those involved were known to keep in their
16 possession the clothing paraphernalia, tools, weapons and electronic devices that they wore, used
17 or carried on that day.

18 What is a much closer question is whether the affidavit also established probable cause to
19 believe that evidence of those crimes would be found on defendant Colton's computer(s) located
20 at his residence. In this regard, all that the supporting affidavit relied upon was the following:

> [I]n my training and experience, it is common for individuals to back up or preserve copies of digital media (such as photos and videos) across multiple devices to prevent loss. Indeed some companies provide services that seamlessly sync data across devices. Thus, there is reason to believe that evidence of the offense that originally resided on COLTON's cell phone may also be saved to other digital devices within the PREMISES. Moreover, here, as widely reported in the news media related to this matter, many individuals committing the Target Offenses kept and posted videos, photos, and commentary about their participation in these offenses, especially bragging about their participation. Based on that, there is also probable cause to believe that evidence related to these offenses may he been transferred to and stored on digital devices beyond the digital device COLTON possessed during the offenses.

12

\* \* \*

>With respect to electronic devices in the shared residence, this search warrant seeks authorization to search only those electronic devices which COLTON appears reasonably likely to own or have access to. This warrant does not seek authorization to search electronic devices which can readily be determined to be used and controlled exclusively by someone other than COLTON. Electronic devices for which agents can determine, based on the location, appearance or other facts, that COLTON lacks access to or control over, will not be seized or searched.

(Doc. No. 26–1 at 33–36 (Affidavit at ¶¶ 65, 69)).

To put it plainly, that's not much. The question though is whether it's sufficient to establish probable cause to search defendant Colton's computer for the photographic and video evidence of the crimes under investigation. In answering this question, the court is certainly aware that:

>As a general matter, "[p]robable cause exists if 'it would be reasonable to seek the evidence in the place indicated in the affidavit.' " *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (citation omitted). Reasonableness is determined by an examination of "the 'totality of the circumstances' in a 'common-sense' manner." *United States v. Mayer*, 560 F.3d 948, 956 (9th Cir. 2009) (citation omitted).

*United States v. Fisher*, 56 F.4th 673, 683–84 (9th Cir. 2022); *see also United States v. Estrella*, 69 F.4th 958, 970 (9th Cir. 2023) ("The rule of probable cause is a practical, nontechnical conception . . . ."); *United States v. Conard*, No. 21-30023, 2021 WL 5861287, at \*1 (9th Cir. 2021)[6] ("[P]robable cause means a fair probability that contraband or evidence is located in a particular place. Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question. Neither certainty nor a preponderance of the evidence is required.") (quoting *United States v. Kleinman*, 880 F.3d 1020, 1036 (9th Cir. 2017)). At the same time, while "expert opinion may . . . be considered in the totality of the circumstances analysis," mere "[c]onclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." *United States v. Underwood*, 725 F.3d 1076, 1081–82 (9th Cir. 2013) (citing *United States v. Cervantes*, 703 F.3d

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1135, 1139–40 (9th Cir. 2012) (affording little if any weight to a detective's conclusory statement that, based on his training and experience, the box in defendant's possession came from a suspected narcotics stash house)). Thus, the Ninth Circuit has recognized that where an affidavit in support of a search warrant sets forth opinion about the behavior of persons, "for the opinion to have any relevance, the affidavit must lay a foundation." (*See id.* at 181) (citing *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990)).

Here, the affiant appears to have assumed that it was likely there would be a computer(s) in the residence. In December of 2023, in the undersigned's view, this was a reasonable and common-sense assumption.[7] However, as noted above, the only basis for finding probable cause to search defendant's computer was the affiant's statement that in his "training and experience, it is common for individuals to back up or preserve copies of digital media (such as photos and videos) across multiple devices to prevent loss" and that "as widely reported in the news media related to this matter, many individuals committing the Target Offenses kept and posted videos, photos, and commentary about their participation in these offenses, especially bragging about their participation." (Doc. No. 26–1 at 33–34 (Affidavit at ¶ 65)). Nonetheless, the conclusion that defendant Colton backed up the photos and videos he took of the events on January 6, 2021, onto his computer is speculative. There are no underlying facts provided in the affidavit to support such a conclusion such as, for instance, that defendant Colton had sent copies of the photos or videos to others using a computer. Rather, the only evidence of such activity on his part was through the use of his cell phone. (Doc. No. 26–1 at 16–19 (Affidavit at ¶¶ 38–39)).

All that is left is the affiant's unsupported conclusion that it is common for people to back up the photos and videos taken on their cell phone to their computers in order to prevent their

---

[7] Defendant has argued otherwise, contending that the affiant lacked probable cause to believe that defendant had a computer or that one would be found at his residence. The court does not find that argument to be consistent with the practical, common-sense manner in which the probable cause standard is to be employed. Moreover, as noted above, the warrant only authorized the search of electronic devices which defendant Colton appeared reasonably likely to own or have access to. (Doc. No. 26–1 at 36 (Affidavit at ¶ 69)). The evidence that defendant seeks to suppress was apparently discovered on the computer found in the defendant's bedroom within the residence.

14

loss. In the undersigned's view, while this could be true and might give rise to a suspicion that the cell phone photos and videos would be found on his computer, the affidavit failed to establish probable cause to believe that evidence of the crimes under investigation would be found there.

### IV. The Good Faith Exception to the Exclusionary Rule

Having found that the search warrant affidavit failed to establish probable cause for the search of defendant's computer, the court must determine whether the good faith exception to exclusionary rule applies here. "The good-faith exception precludes suppression of evidence seized by officers who acted 'in objectively reasonable reliance' on a search warrant that is later declared invalid." *United States v. Artis*, 919 F.3d 1123, 1133 (9th Cir. 2019) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). This is because, as the Supreme Court concluded, "the exclusionary rule should not bar the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (citing *Leon*, 468 U.S. at 918–21); *see also United States v. Elmore*, 917 F.3d 1068, 1078 (9th Cir. 2019) ("[W]e hold that the police here were not required to second-guess the determination of a neutral and detached magistrate."); *United States v. Barnes*, 895 F.3d 1194, 1201 (9th Cir. 2018) (Where officers conduct a search pursuant to a search warrant that is later invalidated, they still satisfy the Fourth Amendment so long as they acted in "objectively reasonable reliance" on that warrant.). The good faith test is an objective one focusing not on what the executing officer believed, or could have believed, but "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Luong*, 470 F.3d at 902 (quoting *Leon*, 468 U.S. at 922).

The Supreme Court in *Leon* identified four situations in which reliance on a search warrant by law enforcement officers cannot be considered objectively reasonable, and in which the good faith exception to the exclusionary rule cannot apply: (1) when the affiant knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 914, 923; *United*

1 *States v. Holcomb*, __F.4th__, 2025 WL 923757, at *8–9 (9th Cir. Mar. 27, 2025); *Underwood*, 725 F.3d at 1085; *Luong*, 470 F.3d at 902.

It is only the third circumstance that is at issue here—whether "the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]'" *Underwood*, 725 F.3d at 1085 (quoting *Leon*, 468 U.S. at 922–23); *see also Elmore*, 917 F.3d at 1076 (holding that the good faith exception to the exclusionary rule is especially likely to be applicable "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope") (quoting *Leon*, 468 U.S. at 920)); *King*, 985 F.3d at 710 (9th Cir. 2021) ("The central question is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."). As the Ninth Circuit has explained,

> An affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause. *United States v. Hove*, 848 F.2d 137, 139–40 (9th Cir. 1988). A colorable argument is made when "thoughtful and competent judges" could disagree that probable cause does not exist. *Id.* at 139 (internal quotations omitted).

*Underwood*, 725 F.3d at 1085; *see also United States v. Krupa,* 658 F.3d 1174, 1179 (9th Cir. 2011) ("[W]e [have] reiterated '[g]ood faith reliance exists if the agents' affidavit establishes "at least a colorable argument for probable cause," and the agents relied on the search warrant in an objectively reasonable manner.'") (quoting *United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008)); *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) ("[I]f there is a colorable argument that the search of Apartment 3 was supported by probable cause, the officer's reliance on the search warrant was objectively reasonable.").

The undersigned concludes that "thoughtful and competent judges" could disagree whether the supporting affidavit in this case established probable cause to search defendant's computer for photos and videos he took of his activities on January 6, 2021. This colorable argument for probable cause to do so is based upon the affiant's training and experience that it was common for individuals to back up their cell phones to their computers and participants in the attack on the Capitol had been known to maintain such evidence and to protect it from loss.

This conclusion is supported by two additional circumstances. First, an experienced magistrate judge of this court found probable cause to search defendant's computer for such evidence in issuing the search warrant. Second, and more importantly, federal circuit courts have endorsed the reasoning that probable cause to search a computer may be premised upon the fact that images from cell phones are transferred and backed up to, as well as stored on, computers. *United States v. Contreras*, 905 F.3d 853, 859 (5th Cir. 2018)[8] ("Finally, Contreras contends that because Kik is a messaging application for cell phones only, there was no probable cause to search for and seize computers or other objects. This argument is unpersuasive. [The] affidavit noted that cell phones can easily be used in conjunction with computers to transfer, view, back up, or store child pornography images."); *see also United States v. Smith*, 108 F.4th 872, 879 (D.C. Cir. 2024) ("Given that probable cause already existed for multiple electronic devices in Smith's apartment, police had reason to believe that other devices in the apartment might also contain evidence of the suspected offense. Smith could well have transferred evidence of his conduct onto multiple devices. He might have done so in the normal course of cycling through devices, or he might have wanted to make backup copies of photos or disperse evidence across multiple devices."), *petition for certiorari docketed* No. 24-6628 (Mar. 4, 2025).

For these reasons, the undersigned concludes that a colorable argument can be made that the affidavit here provided probable cause to search defendant's computer or, put another way, that "thoughtful and competent judges" could disagree that probable cause to do so was not established. Accordingly, although the undersigned has found probable cause to be lacking, the good faith exception to the exclusionary rule applies to the evidence seized from defendant's computer pursuant to warrant.

/////

/////

/////

---

[8] Although it rejected the defendant's argument that probable cause was lacking to search his computers, the court ultimately relied upon the good faith exception to the exclusionary rule in concluding that the denial of the defendant's motion to suppress evidence was not in error. *Contreras*, 905 F.3d at 859.

**CONCLUSION**

For the reasons set forth above, defendant's motion to suppress evidence seized pursuant to the search warrant executed at his residence in December 2023 (Doc. No. 26), is denied in its entirety.

IT IS SO ORDERED.

Dated:  **April 9, 2025**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE