HEATHER E. WILLIAMS, #122664
Federal Defender
DOUGLAS BEEVERS, #288639
Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone: (916) 498-5700
Fax: (916) 498-5710

Attorneys for Defendant
KYLE COLTON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>KYLE COLTON,<br><br>　　　　　Defendant. | Case No. 2:24-cr-029-DAD<br><br>**MOTION FOR BAIL PENDING APPEAL**<br><br>Date: December 8, 2025<br>Time: 9:30 a.m.<br>Judge: Hon. Dala A. Drozd |

**NOTICE OF MOTION**

**TO:　UNITED STATES ATTORNEY ERIC GRANT AND
ASSISTANT UNITED STATES ATTORNEY KENNY SHEA:**

**PLEASE TAKE NOTICE** that KYLE COLTON, through his attorneys, Federal Defender Heather Williams and Assistant Federal Defender DOUGLAS BEEVERS, hereby moves for bail pending appeal on the grounds that (1) his continued release under Pretrial supervision poses no risk of flight or danger to the community; (2) his appeal is not for the purpose of delay and raises a substantial question of law; and (3) the question of law is of a type that is would result in a reversal of the conviction. This motion is based on the accompanying memorandum of points and authorities and the files and records in the above-entitled case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Colton was released under pretrial supervision for his January 6th case and then shortly afterwards was released on this Eastern District of California case. He has complied with the terms of pretrial supervision.

### II. LEGAL STANDARD

Title 18 section 3143(b)(1) (Release or detention pending appeal by the defendant), allows for release of the defendant pending appeal where the defendant shows:

(A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

     (i)     reversal,
     (ii)    an order for a new trial,
     (iii)    a sentence that does not include a term of imprisonment, or
     (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Bail pending appeal is warranted where "the appeal raises a 'substantial question' of law or fact that is 'fairly debatable,' and [] 'if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.'" *United States v. Wetselaar*, 2017 WL 6514650, at *1 (9th Cir. Nov. 7, 2017) (quoting *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985)). "[A] 'substantial question' is one that is 'fairly debatable,' or 'fairly doubtful.'" *United States v. Bole*, 2012 WL 3778883, at *3 (E.D. Cal. Aug. 31, 2012) (citing to *Handy*, 761 F.2d at 1280–81). "An appeal raises a 'substantial question' if it presents a close question or one that very well could be decided the other way." *United States v. Eaken*, 995 F.2d 740, 741 (7th Cir. 1993) (citing *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (internal citations omitted)).

This inquiry under section 3143(b) requires two inquiries. First, is the question to be raised

on appeal "substantial"; and second, if the appeals court were to rule in the appellant's favor, would that ruling result in a reversal. Indeed, as the Ninth Circuit has explained, "[t]he term 'substantial' defines the level of merit required in the question presented, and the phrase 'likely to result in reversal [or] an order for a new trial' defines the *type* of question that must be presented." *United States v. Montoya*, 908 F.2d 450, 450 (9th Cir. 1990) (quoting *Handy*, 761 F.2d at 1280) (emphasis added). In other words, the question on appeal must be of the kind that, if successful, would likely result in a reversal, an order for a new trial, or in a reduced sentence—as opposed to, for example, a legal issue whose merit would result in another type of remedy or no remedy at all.

### III. ARGUMENT

Mr. Colton meets both prongs of the analysis under section 3143(b)(1).

**A. Mr. Colton is not a flight risk or a danger the community under § 3143(b)(1)(A).**

Mr. Colton has been out of custody for the pendency of his case. His compliance with the conditions of his release over the past years demonstrates that he is not a danger to the community. His appearance at all required proceedings in this case, from start to finish, shows that he is not a flight risk.

**B. Mr. Colton's appeal, regarding whether the computer evidence should have been suppressed, raises a "substantial" issue, which would result in reversal, under § 3143(b)(1)(B).**

Mr. Colton's appeal is not "for purposes of delay." No evidence supports such a finding. Instead, he intends to raise a serious, substantial issue on appeal regarding whether the computer evidence which this Court found was discovered pursuant to a warrant which issued without sufficient probable cause should be suppressed. That the issue is "fairly debatable" under § 3143(b)(1)(B) is demonstrated by the fact that this Court suppressed evidence in the *Katsis* case on somewhat similar facts. The motion to dismiss pursuant to the interpretation of the pardon of all cases related to the January 6th incident is also substantial. Indeed, if either issue is successful on appeal, his conviction would be reversed. *See* 18 U.S.C. § 3143(b)(1)(B)(i); *Montoya*, 908 F.2d at 450.

1. **The Ninth Circuit has not decided whether evidence seized by a warrant that issued without probable cause in violation of the Fourth Amendment must be saved by the good faith exception where there was substantial precedent indicating that mere commission of a crime is not enough to support probable cause to search a computer.**

This Court has held that the search warrant in Mr. Colton's case issued without probable cause, but declines to suppress the evidence based on the officer's good faith. The Ninth Circuit has not determined the complete parameters of the good faith exception, such as whether the good faith exception is available where the U.S. Attorney's Office supervising the application for the warrant had notice of similar warrants for searches of computers being found to have been lacking in probable cause. In applying for warrants the F.B.I. is under the supervision of the U.S. Attorneys Office for the District where the evidence is sought. Due to this Court's decision in the *Kastis* case suppressing a warrant based on the same theory that commission of a crime is not enough probable cause to obtain a warrant for a computer, the U.S. Attorney's Office should have made the F.B.I. agent aware of this precedent and advised the U.S. Magistrate Judge of the law. In *Davis* the Supreme Court held that the good faith exception prevented exclusion of evidence where police rely on binding appellate precedent even if the Supreme Court later overruled that precedent. *Davis v. United States*, 564 U.S. 229, 241 (2011). The Court explained that "responsible law-enforcement officers will take care to learn 'what is required of them' under Fourth Amendment precedent and will conform their conduct to these rules." *Id*. Under *Davis*, the Supreme Court clearly expects law enforcement to know binding Circuit precedent. It is clear that the F.B.I. should have known Ninth Circuit precedent and it is debatable to what extent F.B.I. operating in a district should be aware of district court decisions interpreting Ninth Circuit precedent, particularly when the U.S. Attorney's Office essentially accepted the district court's decision as correct by not appealing to the Ninth Circuit such as occurred in the *Kastis* case.

2. **The Interpretation of the Presidential Pardon is Debatable.**

The United States has taken the position that the pardon applies to firearms cases if the

guns were found based on January 6th search warrants – even years after the January 6th incident. The D.C. Circuit Court of Appeals in a two to one decision rejected the United States' interpretation of the pardon in a felon in possession of firearms case. *See United States v. Daniel Wilson*, 2025 U.S. App. LEXIS 7884 (D.C. Cir. April 5, 2025).  The D.C. Circuit's decision was only on the probability of success as it was an appeal of a decision to deny bail pending appeal in a § 2255 habeas case.  Note that one judge would have granted the motion for bail under 18 U.S.C. §3143.  The D.C. Circuit appointed an amicus to argue against the D.O.J. position in the Daniel Wilson appeal.  On November 15, 2025, President Trump confirmed that his DOJ had taken the correct position and he issued a second pardon expressly pardoning Daniel Wilson for the felon in possession of firearms offenses.  https://www.pbs.org/newshour/politics/trump-issues-second-pardon-to-jan-6-defendant-for-separate-gun-offense  This action strongly supports the position that President Trump originally intended to pardon individuals for offenses discovered in the investigation.  President Trump has not pardoned other individuals convicted of 18 U.S.C. § 922(g) where the guns were found unrelated to January 6th.  The United States contends that the firearms cases are distinguishable, because the search warrants were looking for firearms. However, the search warrants were all expressly looking for all electronic communications by January 6th participants to other participants and co-conspirators and expressly searching for attached photographs. See ECF 26-1 Search warrant para. 64 at page 33.  The warrant was searching for illegal communications and the computer evidence against Mr. Colton in this case consists of electronic communications with pictures attached.  Although the warrant was not expressly looking for child pornography it was looking for any evidence of criminal conversations without any temporal limits.  Clearly the authors of these warrants believed the January 6th participants were generally dangerous people who needed to be thoroughly investigated in all communications for their entire life if possible.

   Courts have rarely been in a position to interpret executive pardons, however when the occasion arises, courts look to the plain language and the apparent intent behind the pardon.  See *United States v. Matassini*, 565 F.2d 1297, 1302 (5th Cir. 1978) ("[T]he state pardon granted to

1  Matassini did contemplate the removal of virtually all collateral disabilities flowing from
2  Matassini's 1950 conviction. . . .  We [interpret the pardon] in light of the effect that the pardon
3  was intended to have under Florida law, the language and legislative history of Title VII, and the
4  applicable canons of statutory construction.") (emphasis added); *Fletcher v. Graham*, 192 S.W.3d
5  350, 359 n.19 (Ky. 2006) ("The Governor's use of the word 'or' clearly intends to establish two
6  subsets of the class of pardoned persons . . . .") (emphasis added); *Abson v. State*, 139 Tex. Crim.
7  416, 418 (1940) ("[I]t is apparent that it was the intention of the Governor to pardon Matura of that
8  offense.") (emphasis added).  In considering the plain language of a pardon, courts have
9  interpreted the language broadly in favor of the potential recipient.  *See Fletcher*, 192 S.W.3d at
10 359 n.19 ("'[A] pardon is to be taken most beneficially for the recipient and most strongly against
11 the authority by which it is granted, whenever its meaning is in doubt.'") (*quoting Ex parte
12 Paquette*, 112 Vt. 441 (1942)); *Ex parte Eggleston*, 234 P. 970, 971 (Kan. 1925) ("Cases collected
13 Responsible law-enforcement officers will take care to learn "what is required of them" under
14 Fourth Amendment precedent and will conform their conduct to these rules. Hudson, 547 U.S., at
15 599, 126 S. Ct. 2159, 165 L. Ed. 2d 56. But by the same token, when binding appellate precedent
16 specifically authorizes a particular police practice, well-trained officers will and should use that
17 tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a
18 search in reliance on binding appellate precedent does no more than " 'ac[t] as a reasonable officer
19 would and should act' " under the circumstances.in a recent note [citation omitted] show a
20 variation from a very strict to a quite liberal construction of the language of a pardon, with a
21 modern tendency, as might be expected, towards liberality.").
22    Since President Trump's actions in the Daniel White case strongly indicate that he did
23 intend the pardon to apply to evidence found as a result of the investigation, there is a strong
24 possibility that an appellate court could find that Mr. Colton's case which is based on evidence
25 which this Court has held was discovered in an unconstitutional search was covered by the pardon.
26
27                                    **IV. CONCLUSION**
28

Mr. Colton respectfully requests that this Court order that he is to remain on bail, under the same conditions of release, pending resolution of his appeal.

Date: December 8, 2025

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

/s/ DOUGLAS BEEVERS
DOUGLAS BEEVERS
Assistant Federal Defender
Attorney for Defendant
KYLE COLTON